OPINION OF THE COURT
William L. Underwood, Jr., J.
The case at bar is a dispute arising from the plaintiff’s taking the standardized Graduate Record Examination (GRE) administered by the defendant corporation. The essential allegations are not in dispute. Plaintiff sat for the examination on two occasions. After plaintiff took the test for the second time, her score significantly improved. Defendant accused the plaintiff of cheating. There is no direct evidence to support this allegation. Rather, the basis of this charge was circumstantial evidence consisting of substantial similarity between plaintiff’s answers and the test of another student (identified only as Candidate B). Plaintiff participated in the defendant’s internal review procedure to investigate the allegation. During its review, defendant allowed plaintiff to present certain evidence on her behalf. At the conclusion of the investigation, however, defendant confirmed its accusation and informed plaintiff that it was going to cancel plaintiff’s grade. Plaintiff had obtained admission to a university’s graduate program (based in part on the disputed grade) in the interim. Defendant now proposes to inform the university of its final determination. Plaintiff seeks a preliminary injunction preventing defendant from cancelling plaintiff’s December 9, 1995 GRE score. Defendant has cross-moved for summary judgment. Initially, we will consider whether this action lends itself to summary relief.
The extraordinary relief of summary judgment is to be used sparingly since it deprives a party of his day in court (Henderson v City of New York, 178 AD2d 129 [1st Dept 1991]). It is appropriate only in instances where the court thoroughly examines the merits of the action and determines that no triable issue of fact exists (Marine Midland Bank v Dino & Artie’s Automatic Transmission Co., 168 AD2d 610 [2d Dept 1990]). Even the color of a triable issue prevents the granting of this relief (Matter of Benincasa v Garrubbo, 141 AD2d 636 [2d Dept 1988]).
Despite plaintiff’s description of defendant’s actions as being "arbitrary and capricious”, this action is governed solely by *930 the law of contract and not by analogy to CPLR article 78 proceedings or reliance on constitutional due process (Matter of Yaeger v Educational Testing Serv., 158 AD2d 602 [2d Dept 1990]). As in Yaeger (supra), the plaintiff entered into a written agreement with defendant which provided, inter alia, that ETS could cancel the score of a test taker " 'whose validity is questioned because the scores may have been obtained unfairly’ ” (supra, at 604). In accordance with this contract, plaintiff also agreed to (and participated in) the defendant’s review process. This process ultimately provided a series of options, including the use of arbitration. At first glance, this would seem to indicate that summary judgment (if confined to an interpretation of the written agreement and admitted facts) is appropriate (American Express Bank v Uniroyal, Inc., 164 AD2d 275 [1st Dept 1990], lv denied 77 NY2d 807). As discussed infra, the presence of an implied covenant prevents the use of summary relief.
The plaintiff asserts, and the defendant admits, that defendant destroyed plaintiff’s test booklet as well as the test booklet of "Candidate B”. Defendant has averred that these documents were irrelevant to the ultimate finding that plaintiff cheated on her examination. In contrast, plaintiff contends that notations on her test booklet (and those of "Candidate B”) "would have proven that I did not copy or cheat” (plaintiff’s affidavit, dated Oct. 18, 1996, 41).
Regardless of the express terms of the contract, the agreement between the parties carried with it (as do all contracts) an implicit duty of good faith and fair dealing. This implied covenant requires that " 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract’ ” (Dalton v Educational Testing Serv., 87 NY2d 384, 389 [1995]). Or, as the dissent stated more comprehensively in Dalton: "the issue here is whether there is evidence that ETS performed its discretionary functions arbitrarily or irrationally, or with bad faith in fact (cf., Langston v ACT, 890 F2d 380, 386; Johnson v Educational Testing Serv., 754 F2d 20, cert denied 472 US 1029 * * *)” (Dalton v Educational Testing Serv., supra, at 397 [Levine, J., dissenting]).
The question of destruction of evidence was not addressed by the Court in Dalton (supra), or other similar cases. Defendant has asserted that all test booklets are destroyed in the normal course of its business. Although litigation had not been commenced in connection with the examination (at the time the materials were destroyed) the propriety of destroying ma *931 terial which is arguably relevant to an ongoing investigation and a future arbitration proceeding (provided in the contract) is, at best, questionable. At the very least, this court finds that it creates a triable issue as to defendant’s good-faith efforts in discharging its obligation to fully investigate the question of plaintiffs academic dishonesty. Accordingly, the cross motion for summary judgment must be denied.
We now turn to plaintiff’s motion for a preliminary injunction. In order to prevail in a motion for this relief, the movant must demonstrate: (1) the likelihood of ultimate success on the merits; (2) that irreparable injury will result without a preliminary injunction; and (3) that a balancing of equities favors the movant’s position (Family Affair Haircutters v Detling, 110 AD2d 745 [2d Dept 1985]). A bare conclusory allegation by the movant is insufficient (Buegler v Walsh, 111 AD2d 206 [2d Dept 1985]). Plaintiff has alleged, with some particularity, that if defendant cancels her GRE score and informs her current school of same, she will, in all likelihood, be expelled. This demonstrates, to our satisfaction, that monetary damages (if they could be computed at all) could not adequately compensate her if she prevails at trial (Fox v Wiener Laces, 74 AD2d 549 [1st Dept 1980]). Additionally, we find that defendant’s destruction of evidence has created both a reasonable probability of success and balancing of equities in favor of the plaintiff (Weissman v Kubasek, 112 AD2d 1086 [2d Dept 1985]).
Plaintiff’s motion papers fail to discuss the subject of an undertaking. CPLR 6312 (b) provides, inter alia, that: "prior to the granting of a preliminary injunction, the plaintiff shall give an undertaking in an amount to be fixed by the court, that the plaintiff, if it is finally determined that he or she was not entitled to an injunction, will pay to the defendant all damages and costs which may be sustained by reason of the injunction”.
The imposition of an undertaking is a mandatory prerequisite to an injunction (Carter v Konstantatos, 156 AD2d 632 [2d Dept 1989]; Family Affair Haircutters v Detling, supra). The absence of an undertaking renders the preliminary injunction voidable (Wasus v Young Sun Oh, 86 AD2d 753 [1982]). Since the record is silent on the issue of the amount of the undertaking, the court directs the parties to settle order. The parties are further directed to submit suggestions as to the monetary *932 amount of the undertaking. The temporary restraining order shall continue in force and effect for 30 days from service of a copy of this order with notice of entry.